BROWN, APPELLEE, *v.*
TOLEDO MENTAL HYGIENE CLINIC, APPELLANT, ET AL.

[Cite as Brown v. Toledo Mental Hygiene Clinic (1977),
63 Ohio App. 2d 73.]

(No. L-77-074—Decided November 25, 1977.)

*Ms. Doris K. Wohl,* for appellee.
*Mr. Patrick J. Johnson,* for appellant.

BROWN, J. This is an appeal from a ruling by the Lucas County Common Pleas Court enjoining the appellant, Toledo Mental Hygiene Clinic, from enforcing its mandatory retirement policy against an employee, appellee Oril Brown.

This case involves a unique situation in which a public employee is subject to two conflicting retirement policies, one imposed by her private employer and one imposed by the state through R. C. Chapter 145. The circumstances under which this situation arose are as follows. The Clinic is presently an independent private agency which contracts with the Lucas County Mental Health and Mental Retardation Board to provide specified mental health and retardation services. It is basically an autonomous unit, run by its own directors pursuant to R. C. 340.06, and the contracts between the Clinic and the Mental Health Board. However, prior to the enactment of R. C. Chapter 340 (Community Mental Health and

Retardation Services) and the creation of the Board, the Clinic received partial state funding and, therefore, was to some extent a public agency. Appellee Brown, a clinical psychologist, was hired by the Clinic during that period. Brown's salary was paid directly by the state and she was, therefore, a "public employee," required to enroll in the Public Employees Retirement System (PERS). When the Clinic reverted to its private status in 1969, Brown, along with the Clinic's other public employees, was given the option of continuing her membership in PERS. Brown chose to remain in PERS. This carryover of an employee's "public employee" status when the status of the employer changes from public to private, is the crux of the problem. It will not recur in the future because private contract agency employees are no longer eligible to join PERS according to a PERS memorandum dated August 26, 1975. In 1973, the Clinic directors adopted a retirement policy incorporating a staggered retirement age for current employees, with the ultimate goal of mandatory retirement at age 65 for all employees. When the Clinic tried to enforce that policy against Brown, she brought suit, claiming that as a member of PERS she could not be compelled to retire before age 70.

The trial court found in Brown's favor and the Clinic here appeals, assigning as error the following:

"I. The trial court erred in determining that, as a matter of law, defendant-appellant, Toledo Mental Hygiene Clinic, is an 'employer' as defined in Sub-section D of Section 145.01 of the Ohio Revised Code and thereby bound by the terms and provisions of Ohio Revised Code 145.32.

"II. The trial court erred, as a matter of law, in finding that any requirement that the defendant-appellant, Toledo Mental Hygiene Clinic, places or attempts to place, upon plaintiff-appellee, which compels her retirement prior to the 30th day of June next following her attainment of the age of seventy (70) years would be unlawful as a violation of Section 145.32 of the Ohio Revised Code."

While the parties agree that appellee Brown is a "public employee" as that term is defined in R. C. 145.01(A), they disagree as to whether the Clinic is an "employer." The disagreement centers on which of the two definitions of "employer" in R. C. 145.01 is applicable here.

R. C. 145.01(A), which defines "public employee," states, in part:

" 'Public employee' also means one who is a member of the retirement system who continues to perform the same or similar duties under the direction of a contractor who has contracted to take over what before the date of such contract was a publicly operated function. The governmental unit with whom such contract has been made shall be deemed the employer for the purposes of administering Chapter 145 of the Revised Code."

The governmental unit in this case is the Mental Health Board. However, R. C. 145.01(D), which defines "employer," follows its list of various governmental units with the statement: "In addition, 'employer' means the employer of employees described in division (A) of this section." This statutory provision indicates that non-governmental units may also be employers under Chapter 145.

The court below resolved the issue by ruling that the Mental Health Board is Brown's employer under R. C. 145.01(A) for the purpose of administering Chapter 145, and the Clinic is Brown's employer under R. C. 145.01(D) for the purpose of R. C. 145.32, which governs compulsory retirement. We affirm.

This ruling conforms to the recognized duty of the court in cases of statutory construction to construe ambiguous statutory sections to harmonize and give full effect to all sections whenever possible. Furthermore, as a matter of policy we find it illogical, unreasonable and inequitable to deny a member of PERS the protection that system affords because of the change in status of her employer resulting from bureaucratic reorganization, which change affected neither the previous employer-employee relationship, nor the employee's membership in PERS. Appellant's first assignment of error is not well taken.

As the Clinic is an employer for the purpose of R. C. 145.32, the Clinic may not apply a retirement policy to those of its employees enrolled in PERS which conflicts with the provisions of that section. R. C. 145.32 * authorizes an employer to

---

* The relevant portion of R. C. 145.32 provides:

"An employer may, as of the thirtieth day of June of any year, terminate the employment of any member who has attained the age of seventy years. Any such

compel an employee to retire only when the employee has attained the age of 70 years. Therefore, the Clinic's attempt to compel appellee Brown to retire at age 68 is a violation of that statute. Appellant's second assignment of error is not well taken.

*Judgment affirmed.*

POTTER, P. J., and CONNORS, J., concur.

employee whose employment is not so terminated shall be required to present a certification prior to the thirtieth day of June of each year by a physician licensed * * * that the member is physically and mentally competent to perform the duties of the particular position which he occupies. * * *"